574 So.2d 381 (1990)
Mr. and Mrs. Robert ROBERTSON, Lawful Parents and Legal Guardians of the Minor, Roderick Robertson,
v.
OUR LADY OF The LAKE REGIONAL MEDICAL CENTER, Hewlett Packard Sales & Support, and Liberty Mutual Ins. Co.
No. 89 CA 1513.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
*382 Edward A. Robinson, III, Baton Rouge, for Mr. and Mrs. Robertson.
C. Michael Hart, Baton Rouge, for IPCO Corp.
Laurence E. Larmann, Trial Atty., Metairie, for Cardiac Recorders, Ltd.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting defendants' motions for summary judgment and dismissing plaintiffs' suit.

BACKGROUND
Prior to February of 1985, Roderick Robertson, a two-year-old twin son of plaintiffs, Mr. and Mrs. Robert Robertson, suffered from a chronic bronchial condition. On or about February 9, 1985, Roderick underwent a bronchoscopy at Our Lady of the Lake Regional Medical Center (OLOL) in Baton Rouge, Louisiana. Roderick was administered a general anesthetic, and the bronchoscopy was performed without incident. Roderick, however, had difficulty breathing without assistance as he came out of the anesthetic. His pulse slowed, and medications were administered to increase his heartbeat. Shortly thereafter, Roderick had no pulse, and the medical staff performed cardiac massage and administered additional medication. Roderick responded immediately without any residual effects.
When Roderick's bronchial condition failed to improve, he underwent a laryngoscopy at OLOL on February 21, 1985. Roderick was administered a general anesthetic, and the laryngoscopy was performed without incident. Shortly thereafter, Roderick's heart rate began to drop. The anesthesiologist attempted to increase the heart rate by administering medications, but inadvertently administered a medication which slowed the heart rate. Roderick subsequently suffered cardiac and respiratory arrest. Two defibrillators were brought into the surgical area. The first defibrillator failed to deliver a charge to initiate the child's heartbeat, but the second defibrillator successfully initiated the heartbeat. However, the incident lasted approximately nine minutes, and Roderick sustained profound neurological damage.
Thereafter, a proceeding before a medical review panel was apparently initiated against the anesthesiologist, nurses, and hospital for the alleged medical malpractice by the qualified health care providers. On February 21, 1986, plaintiffs filed the instant products liability action against OLOL; its insurer; Hewlett-Packard Corporation (Hewlett-Packard)[1], the alleged manufacturer of the defibrillator; and its insurer, Liberty Mutual Insurance Company (Liberty Mutual). By judgment, dated March 24, 1986, plaintiffs voluntarily dismissed OLOL and its insurer. On July 16, 1986, plaintiffs amended their petition, naming as defendants the Louisiana Patient's Compensation Fund (Compensation Fund), liability and excess insurer of OLOL and the anesthesiologist; IPCO Corporation, alleged manufacturer of the defibrillator; and IPCO's insurer. By judgment, dated July 17, 1986, plaintiffs voluntarily dismissed Hewlett-Packard and Liberty Mutual. Pursuant to a petition for authorization to settle a medical malpractice claim, the trial court rendered judgment on December 22, 1986, approving plaintiffs' settlement *383 of their malpractice claims against the qualified health care providers.[2]
Thereafter, IPCO answered plaintiffs' petition, denying the allegations, and filed a third party demand against Professor J.F. Pantridge, M.C., M.D., and John Anderson, alleged inventors and designers of the Model 280 defibrillator; and Cardiac Recorders, Limited (Cardiac Recorders), alleged manufacturer of the Model 280 defibrillator.[3] Plaintiffs subsequently amended their petition to name Pantridge, Anderson, and Cardiac Recorders as additional defendants.
On April 20, 1989, IPCO and its insurer filed a motion for summary judgment, and Cardiac Recorders filed a motion for summary judgment on May 1, 1989. Attached to IPCO's motion were portions of various depositions taken before the medical review panel, portions of the deposition of plaintiffs' expert witness, and numerous affidavits. In support of their motions for summary judgment, the defendants asserted two separate bases. First, defendants argued that the evidence in the record showed that the defibrillator was operating correctly on the date of the laryngoscopy as evidenced by the indicator lights and joule gauge which, according to the expert testimony, showed the machine to be in operating condition. Defendants reasoned that, as a result, plaintiffs had not shown that the machine was defectively designed or manufactured or was otherwise malfunctioning. Second, defendants argued that the material facts, which were allegedly not in dispute, established that the operating room team, specifically the anesthesiologist, did not correctly utilize and operate the defibrillator manufactured by Cardiac Recorders on plaintiffs' child in that only one of the electrodes was placed on the child's chest. Defendants concluded that they could not be held liable under any theory because the defibrillator was not used in the manner in which it was intended. In fact, defendants argued that the defibrillator was not and is not designed to operate correctly unless both electrodes are used upon the body of a patient in simultaneous operation. In other words, defendants asserted that the evidence showed that the machine was improperly used by the anesthesiologist. Even if a defect existed in the machine, the improper use of the machine was the cause in fact of any resulting injury sustained by plaintiffs' child, and any defect in the machine, if one existed, was not a cause in fact of the injuries. Plaintiffs opposed the motions for summary judgment, introducing numerous affidavits.[4]
After a hearing, the trial court determined that, among other things, there was no genuine issue of material fact that the anesthesiologist did not properly operate the defibrillator in that the evidence was uncontradicted that only one electrode was placed on the child. The trial court determined that defendants were entitled to judgment as a matter of law and granted the motions for summary judgment.
From this adverse judgment, plaintiffs appeal, questioning the propriety of the granting of the motions for summary judgment.

SUMMARY JUDGMENT
LSA-C.C.P. art. 966 provides, in pertinent part:
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed....
B.... The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, *384 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
LSA-C.C.P. art. 967 provides, in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein....
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
In McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308 (La.App. 2nd Cir.), writ denied, 457 So.2d 1194 (La.1984), the court stated:
That portion of an affidavit or deposition not based on personal knowledge should not be considered in deciding a motion for summary judgment. Statements in affidavits or depositions of the opinion or belief of an expert based on his special training and experience do not meet the requirement of personal knowledge. A statement of opinion is not sufficiently certain or probative to justify a conclusion that there is no issue of fact which should be determined by a trial on the merits. Expert opinion statements or testimony requires evaluation by the trier of fact as to probative value. A motion for summary judgment is not the proper vehicle for the trier of fact to evaluate evidence and determine the facts which are disputed. See Nelson v. Marrus, 343 So.2d 740 (La.App. 2d Cir. 1977); McWhiney v. Travelers Ins. Co., 343 So.2d 736 (La.App. 2d Cir.1976); Hidalgo v. General Fire & Casualty Company, 254 So.2d 493 (La.App. 3d Cir. 1971); Warden v. Southwest Louisiana Hospital Association, 300 So.2d 590 (La. App. 3d Cir.1974).
452 So.2d at 310. This court in Brock v. Newman, 543 So.2d 84 (La.App. 1st Cir.), writ denied, 548 So.2d 1251 (La. 1989), followed the approach set forth in McCoy.
It is well settled that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Kerwin v. Nu-Way Construction Service, Inc., 451 So.2d 1193 (La.App. 5th Cir.), writ denied, 457 So.2d 11 (La.1984); Landry v. Brandy, 389 So.2d 93 (La.App. 4th Cir. 1980); Cooper v. Anderson, 385 So.2d 1257 (La.App. 4th Cir.), writ denied, 393 So.2d 738 (La. 1980). The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Frazier v. Freeman, 481 So.2d 184 (La.App. 1st Cir.1985); Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 435 So.2d 1058 (La. App. 1st Cir.1983). Under LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials in his pleadings when a motion for summary judgment is made and supported by affidavits. Manzella v. Terrebonne Parish Police Jury, 432 So.2d 414 (La.App. 1st Cir.1983).
On motion for summary judgment, it must first be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact; if they are not sufficient, summary judgment should be denied. It is only if they are sufficient that the burden shifts to the opposing party to present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 *385 (La.1980); Frazier v. Freeman, 481 So.2d at 186; Nathans v. Vuci, 443 So.2d 690 (La.App. 1st Cir. 1983).
In certain instances, the failure of an adverse party to file counter-affidavits does not automatically entitle the moving party to summary judgment. Jewell v. Thompson, 386 So.2d 689 (La.App. 3rd Cir.), writ denied, 393 So.2d 746 (La.1980); Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc., 346 So.2d 743 (La.App. 1st Cir.1977). However, if the moving party has established both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, it is incumbent upon the adverse party to set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967; Manzella v. Terrebonne Parish Police Jury, 432 So.2d at 417.
Summary judgments are not favored, and any reasonable doubt should be resolved against the mover. Dupuy v. Gonday, 450 So.2d 1014 (La.App. 1st Cir. 1984). In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d at 775; Chaisson v. Domingue, 372 So.2d 1225 (La.1979).
Although the depositions and affidavits filed in this case strongly suggest that plaintiffs cannot meet their burden of proving that any alleged defect in the Model 280 defibrillator caused the damage to their child, summary judgment is not appropriate. To the extent that the depositions and affidavits express opinions as to whether the defibrillator was used properly, they are not based upon personal knowledge and may not be considered in ruling on a motion for summary judgment, although the physicians' and nurses' opinions would be admissible and would constitute probative evidence at trial. Consideration of opinion evidence calls for the type of evaluation the trier of fact engages in during a trial on the merits. Walter F. Sawyer v. Dallas J. Boudreaux, et al, 569 So.2d 123 (La.App. 1st Cir.1990). See McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d at 310.
Absent consideration of the opinions regarding whether the defibrillator was properly used by the anesthesiologist, we cannot say there is an absence of any doubt as to the material fact of whether a defect in the defibrillator caused the injury to plaintiffs' child. Therefore, defendants are not entitled to judgment as a matter of law, and the trial judge erred in granting the motions for summary judgment.

CONCLUSION
For the above reasons, the judgment of the trial court granting defendants' motions for summary judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs are assessed against defendants, IPCO and its insurer and Cardiac Recorders.
REVERSED AND REMANDED.
NOTES
[1] Hewlett-Packard Company was erroneously referred to as "Hewlett-Packard Corporation" in plaintiffs' petition.
[2] The $500,000.00 settlement with plaintiffs represented a $100,000.00 payment by St. Paul Fire and Marine Insurance Company on behalf of the anesthesiologist, nurses, and OLOL and a $400,000.00 payment by the Louisiana Patient's Compensation Fund.
[3] IPCO also filed other pleadings, none of which are pertinent to the issues presented in the instant appeal.
[4] A videotape of an inspection of the allegedly defective defibrillator was also introduced by one of the parties.